UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

LINDA SNEAD,

       Plaintiff,

    v.

INTERIM HEALTHCARE OF
ROCHESTER, INC.

       Defendant.

_____

**DECISION & ORDER**

6:16-CV-06550 EAW

## INTRODUCTION

On August 8, 2016, Plaintiff Linda Snead ("Plaintiff") commenced this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and the New York Labor Law, N.Y. Labor Law §§ 190, *et seq.*, N.Y. Labor Law §§ 650, *et seq.* ("NYLL"), and the corresponding state regulations. (Dkt. 1). Plaintiff alleges causes of action for unpaid wages and overtime payments, as well as for the failure to comply with minimum wage requirements and pay notice standards. (*Id.* at 8-11). On February 3, 2017, Defendant answered the complaint, denying the material allegations stated therein and raising various affirmative defenses. (Dkt. 13). However, on August 21, 2017, a Mediation Certification was filed indicating that the case had settled. (Dkt. 27).

Presently before the Court is the parties' Joint Motion for Settlement Approval. (Dkt. 32). The parties have attached the proposed settlement instrument as an exhibit to their motion (the "Agreement"). (Dkt. 32-2). Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), either the district court or the United States

- 1 -

Department of Labor must approve the settlement of an employee's claims against their employer, where the settlement would dispose of those claims with prejudice. *Id.* at 206. On January 29, 2018, the Court held a motion hearing to address the parties' joint application. The Court reserved decision and requested that Plaintiff's counsel provide a supplemental submission detailing the nature of the work performed, counsel's experience level, and contemporaneous time records, if they were available. On February 5, 2018, Plaintiff's counsel submitted an affidavit describing the work performed in this case (Dkt. 35), and attached contemporaneous time records noting the date and nature of the work performed as well as the person who undertook each recorded task (Dkt. 35-1). The parties ask this Court to find the Agreement to be fair and reasonable, and that the proposed attorney's fees incorporated therein are reasonable. (Dkt. 32-1). For the following reasons, the parties' motion is granted.

## BACKGROUND[1]

Plaintiff worked for Defendant, as a non-exempt home health aide, from June 2007 through December 2013. (Dkt. 32-1 at 2). Plaintiff allegedly worked anywhere between 40 and 80 hours a week, but was paid below minimum wage and at improper pay rates, and was not paid for overtime hours. (*Id.*). After Defendant answered the complaint, this action proceeded through the initial stages of discovery. Upon the review of Plaintiff's own records and of Defendant's records obtained through discovery, Plaintiff's counsel concluded that Defendant owed Plaintiff $602.28 in unpaid wages ranging back to August

---

[1]     The information contained in this portion of the Decision and Order is taken from the Joint Motion for Settlement Approval. (Dkt. 32-1).

8, 2013, under the FLSA, and $6,254.62 for unpaid wages ranging back to August 8, 2010, under the NYLL. (*Id.*). Defendant denies liability and disputes Plaintiff's computation of damages. (*Id.*).

Beginning in 2017, the parties' respective counsel engaged in settlement negotiations. (*Id.* at 3). On August 21, 2017, a mediation certification was filed indicating that the parties had reached a settlement prior to the scheduling of the first mediation session. (Dkt. 27). The Agreement provides Plaintiff with a total settlement amount of $20,000.00. (Dkt. 32-1 at 3). Plaintiff favors this settlement in lieu of continuing with a course of litigation and its attendant costs, and of risking "an uncollectable judgment." (*Id.*; *see id.* at 4 ("[Plaintiff] is a low-income worker who is interested in moving on from time-consuming[] litigation with [Defendant].")). Defendant also favors this settlement, at least in part, due to the costs of continued litigation. (*Id.* at 4).

The parties have agreed that the $20,000.00 will be paid in three checks. The first check will be for "wages payable to [Plaintiff]," in the amount of $6,250.00. (*Id.* at 3). The second check will be for "liquidated damages payable to [Plaintiff]," in the amount of $6,250.00. (*Id.*). The third check will be for "attorneys' fees payable to the Empire Justice Center," in the amount of $7,500.00. (*Id.*).

## DISCUSSION

### I.   Legal Principles

"Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *1 (S.D.N.Y. Dec. 15, 2015) (citing *Cheeks*

*v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect.")). "To approve a settlement, this Court must be satisfied that the agreement is 'fair and reasonable.'" *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Other factors may weigh against settlement approval, such as:

> (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA noncompliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Felix v. Breakroom Burgers & Tacos*, No. 15 CIV. 3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (citations omitted).

## II.   The Factors Weighing in Favor of Approval

The Court finds that the amount of recovery under the Agreement is fair when compared to Plaintiff's expected range of recovery. "Under the FLSA, any employer that violates the requirement to pay minimum or overtime wages 'shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation . . . and in an additional equal amount as liquidated damages." *Beckert v. Rubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015) (quoting 29 U.S.C. § 216(b)). From Plaintiff's perspective, she was entitled to $602.28 in unpaid wages ranging back to August 8, 2013, under the FLSA, and $6,254.62 for unpaid wages ranging back to August 8, 2010, under the NYLL.

The NYLL also supplies a liquidated damages provision that, in its present form, is substantially the same as the one provided for under the FLSA. *See* N.Y. Labor Law § 663(1); *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) ("Today the NYLL and FLSA liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries."). However, the NYLL liquidated damages provisions did not always mirror its federal counterpart. *See Choudry v. Durrani*, No. 14-CV-4562 (SIL), 2016 WL 6651319, at *12 (E.D.N.Y. Nov. 10, 2016) ("Prior to the 2011 Amendment to the NYLL increasing liquidated damages from 25% to 100% of total unpaid wages, some courts 'awarded cumulative liquidated damages under both the FLSA and NYLL because the statutes' liquidated damages provisions serve[d] different purposes.'" (quoting *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016))).

Nonetheless, those amendments have since aligned the two statutes, undermining the rationale for cumulative recovery. *See Chowdhury*, 666 F. App'x at 61 ("In the absence of any indication otherwise, we interpret the New York statute's provision for liquidated damages as satisfied by a similar award of liquidated damages under the federal statute."); *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) ("[The

- 5 -

p]laintiff is not entitled to double recovery for liquidated damages under both the FLSA and NYLL."). Even still, the previous form of the NYLL is still applicable to some claims asserted under its provisions based upon their time of occurrence. *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *13 (E.D.N.Y. Sept. 1, 2015) ("For all NYLL claims that occurred on or before April 8, 2011, NYLL liquidated damages were equal to twenty-five percent of the total amount of wages to be found due. For all NYLL claims that occurred on or after April 9, 2011, the employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due." (quotation marks and citations omitted)), *report and recommendation adopted*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Plaintiff claims that her unpaid NYLL wages extend back to August 8, 2010, and thus, even if Plaintiff was entitled to cumulative recovery of the portion of her NYLL liquidated damages arising before April 9, 2011, it would not matter in this case because all of her alleged unpaid wage claims under the FLSA extend back only to August 8, 2013. (Dkt. 32-1 at 2). As such, any potential recovery under both statutes would take place during the period after the 2011 NYLL amendments were enacted, which have been interpreted as a bar to cumulative recovery. *See Chowdhury*, 666 F. App'x at 61; *Santana*, 198 F. Supp. 3d at 294. It would seem then that any unpaid wages recovered under the NYLL for the period before April 9, 2011, would simply be subject to the previously applicable twenty-five percent liquidated damages provision, instead of the present provision permitting recovery of liquidated damages equivalent to one-hundred percent of recovered unpaid wages. *See* N.Y. Labor Law § 663(1). These calculations indicate that

the settled amount of $6,250.00 in liquidated damages represents an equivalent, or perhaps even an improved, result compared with what could have been reached through litigation.

Furthermore, while the settled amount of $6,250.00 in unpaid wages appears to be less than the total value of the allegedly unpaid wages under the FLSA and the NYLL, it is relatively close and represents a fair compromise in achieving a cessation of this litigation. Indeed, excluding the $7,500.00 award for attorney's fees, the combined settlement sum of $12,500.00 represents a substantial portion of the wages allegedly owed and the liquidated damages recoverable. Therefore, the Court finds that Plaintiff's monetary compensation under the Agreement to be reasonable given her possible range of recovery.

Both parties also indicate that they entered the Agreement, at least in part, to avoid litigation risks and additional costs associated with proceeding with motion practice or a trial. "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted). Here, "the [A]greement was reached early in the proceedings, reflecting the legitimate concerns of both sides to avoid time-consuming and potentially expensive litigation burdens. . . ." *Goett v. VI Jets Int'l, Inc.*, No. 14-CV-8256 (MHD), 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14 Civ. 8043 (AT), 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) ("Beyond establishing claims and defenses at trial, proceeding with litigation would require further discovery and motion practice.").

Furthermore, able and competent counsel on both sides facilitated the Agreement. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (noting that "[d]uring the entire process, [the p]laintiffs and [the d]efendant were represented by counsel experienced in wage and hour law"); *see Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986 (PAE), 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) ("As to the fourth and fifth factors, there are no signs of fraud or collusion, and the settlement here was the product of arms'-length bargaining by experienced counsel.").

Therefore, the Court concludes that the factors favoring the approval of a settlement agreement are present in the instant matter.

## III.   None of the Factors that Weigh Against Approval Are Applicable

In addition, none of the factors that weigh against settlement approval are present here. There is no evidence that other employees are similarly situated to Plaintiff's circumstances. *See Browder v. Advertisement Carriers Enters., Inc.*, No. 15 Civ. 5594 (PAE), 2016 WL 7031608, at *4 (S.D.N.Y. Nov. 30, 2016) ("The fact that no other employee has come forward with a claim supports settlement approval." (citing *Santos*, 2016 WL 2757427, at *3)). "Second, because [Plaintiff] no longer work[s] for [D]efendant[], the Court has little concern that [D]efendant[] used improper leverage to secure the settlement." *Santos*, 2016 WL 2757427, at *3 (citing *Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014)). The Court is also unaware of any "history of FLSA noncompliance" by Defendant, and

Plaintiff's complaint "does not appear to raise novel factual or legal issues that would

further the development of law in this area." *Id.*

## IV.   Additional Considerations in Favor of Approval

"Additionally, in *Cheeks*, the Second Circuit provided guidance as to the types of

provisions that contravene the FLSA's remedial purpose of 'prevent[ing] abuses by

unscrupulous employers, and remedy[ing] the disparate bargaining power between

employers and employees.'" *Yang v. Matsuya Quality Japanese Inc.*, No. 15-CV-

1949(JS)(ARL), 2017 WL 456464, at *1 (E.D.N.Y. Feb. 2, 2017) (quoting *Cheeks*, 796

F.3d at 207).   The Second Circuit specifically disapproved of settlement agreements

containing:

> (1) a battery of highly restrictive confidentiality provisions . . . in strong
> tension with the remedial purposes of the FLSA; (2) an overbroad release
> that would waive practically any possible claim against the defendants,
> including unknown claims and claims that have no relationship whatsoever
> to wage-and-hour issues; and (3) a provision that would set the fee for
> plaintiff's attorney . . . without adequate documentation to support such a fee
> award.

*Cheeks*, 796 F.3d at 206 (quotation marks omitted).   "Courts in this Circuit also commonly

decline to approve settlements containing . . . overbroad non-disparagement

provisions. . . ." *Escobar v. Fresno Gourmet Deli Corp.*, No. 16 Civ. 6816 (PAE), 2016

WL 7048714, at *2 (S.D.N.Y. Dec. 2, 2016).   The Court now turns to these considerations.

### A.   The Mutual Non-Disparagement Clause

The Agreement contains a mutual non-disparagement clause that prohibits

Defendant, its owners, officers, and directors, and Plaintiff, from "directly or indirectly

mak[ing], or caus[ing] to be made, any written or oral statement or other communication

- 9 -

that is derogatory or disparaging to" the respective opposing party.  (Dkt. 32-2 at ¶ 6).

"Although not all non-disparagement clauses are *per se* objectionable, if the provision

'would bar plaintiffs from making any negative statement about the defendants, it must

include a carve-out for truthful statements about plaintiffs' experience litigating their

case.'" *Lazaro-Garcia*, 2015 WL 9162701, at *3 (quoting *Lopez v. Nights of Cabiria, LLC*,

96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015)).  The clause at issue provides that "[a]ny party

is allowed to make truthful statements related to or concerning the Action" (Dkt. 32-2 at

¶ 6), and thus, it is permissible.  *See Geskina v. Admore Air Conditioning Corp.*, No. 16

Civ. 3096 (HBP), 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("Because [the non-

disparagement clause] includes a carve-out for truthful statements, it is permissible."); *see*

*Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y.

June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it

includes the requisite 'carve-out' for truthful statements about plaintiffs' experience

litigating this case.").

### B.    The Absence of a Confidentiality Provision

"Under the common law right to access, a presumption of public access attaches to

any 'judicial document,' defined as a document 'relevant to the performance of the judicial

function and useful in the judicial process.'" *Wolinsky*, 900 F. Supp. 2d at 337 (quoting

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).  "Because

judicial approval is required for settlement under the FLSA, settlement agreements in

FLSA cases are judicial documents to which a presumption of public access applies."

*Martinez v. Ragtime Foods of N.Y., Inc.*, No. 11-CV-1483 (JG) (CLP), 2011 WL 5508972,

at *1 (E.D.N.Y. Nov. 10, 2011); *see Hens v. Clientlogic Operating Corp.*, No. 05-CV-381S, 2010 WL 4340919, at *2 (W.D.N.Y. Nov. 2, 2010) ("Numerous circuit and district courts have concluded that a settlement agreement submitted to the court for consideration and approval is a judicial record and, thus, the presumption of public access attaches."). As such, courts in this Circuit have declined to approve settlement agreements containing broad confidentiality provisions. *See, e.g., Lopez*, 96 F. Supp. 3d at 178-81. However, the Agreement contains no such provision, and thus, is not burdened by such an encumbrance. *See Santos*, 2016 WL 2757427, at *3 (stating that the settlement agreements "do not contain confidentiality provisions that would undermine the broad remedial purposes of the FLSA, and [the plaintiff] is not precluded, under his private agreement, from discussing the settlement of his FLSA and NYLL claims").

### C.    The Mutual Release Provisions

"Some courts scrutinizing FLSA settlement have refused to approve settlements with broad releases of claims, concluding that they conflict with the FLSA's remedial purposes." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). "In this Circuit, courts routinely reject broad releases in FLSA cases of 'unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Felix*, 2016 WL 3791149, at *3 (quoting *Lopez*, 96 F. Supp. 3d at 181).

Here, the proposed mutual waiver and release provisions require Plaintiff to release Defendant,

its officers, directors and employees, from any and all demands, causes of
action, and complaints that she now has *related to the payment of
compensation wages and wage and notice related recordkeeping*, under
common, equitable, federal, state or local law, including without limitation,
all claims, demands, causes of action and complaints alleged in the
Complaint filed in this Action, or otherwise arising from [Plaintiff]'s
employment and/or termination of employment and/or association with
[Defendant].

(Dkt. 32-2 at ¶ 5(b) (emphasis added)).   While this paragraph refers to claims "arising

from" Plaintiff's employment or the termination thereof, this waiver provision pertains

solely to any wage or hour related-claim that Plaintiff raised or could have raised in this

action. *See Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL),

2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) ("[T]he parties' release language here

is limited to causes of action 'related to claims for unpaid wages and overtime arising under

the [FLSA], 29 U.S.C. § 216(b) [and] claims for unpaid wages and overtime arising under

the [NYLL], Article 19 and 12 N.Y.C.R.R. Part 142. . . .'"), *report and recommendation

adopted*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037406 (E.D.N.Y. July 17, 2017); *cf.

Batres v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3

(E.D.N.Y. Sept. 15, 2016) (finding that the release provision was overly broad where it

required the plaintiffs to "release 'any and all *other employment-related claims* arising up

to and including the date [the p]laintiffs sign [the] Agreement'" (emphasis added)).

However, the next "waiver and release" paragraph specifies:

Waiver includes but is not limited to: (i) any claims, demands, causes of
action, or complaints (collectively called "claims") arising out of or under
[the FLSA], as amended; Articles 5, 6, 7, and 19 of the [NYLL], as amended,
as well as the regulations and Wage Orders promulgated thereunder; the
Employee Retirement Income Security Act of 1974, as amended; *and any*

- 12 -

*other claim whether for monies owed*, reimbursement, attorneys' fees, litigation costs, damages, *arising from [Plaintiff]'s employment and/or termination or employment and/or association with [Defendant]*, including all claims asserted in the Complaint.

(Dkt. 32-2 at ¶ 5(c) (emphases added)).  This release language is broader than what some courts in this Circuit would permit.  *See Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The [c]ourt will not approve a release provision that extends beyond the claims at issue in this action."); *Lazaro-Garcia*, 2015 WL 9162701, at *2 ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action.").  Indeed, the waiver includes any claims arising under the Employee Retirement Income Security Act of 1974, and "any other claim . . . arising from [Plaintiff]'s employment and/or termination or employment and/or association with [Defendant]."  (Dkt. 32-2 at ¶ 5(c)).  Accordingly, the waiver provision includes causes of action that were not at issue in this case, and that are unrelated to wage-and-hour claims.  *See Rivera v. SA Midtown LLC*, No. 16 Civ. 2097 (PAE), 2017 WL 1378264, at *1 (S.D.N.Y. Apr. 11, 2017) ("The [a]greement then recites a lengthy, expressly nonexclusive list of statutes and claims from which [the plaintiff] is releasing [the] defendants, including under the Employee Retirement Income Safety Act of 1974 ("ERISA"). . . ."); *Batres*, 2016 WL 4991595, at *3 ("[T]he release provision specifies that [the p]laintiffs must release claims arising under theories of liability not alleged in the instant action. . . .").

Nonetheless, the Court notes that the instant provision's terms are not as broad as an all-encompassing general release clause.  *See Chimbay v. Pizza Plus at State Island*

*Ferry Inc.*, No. 15-CV-2000 (RLE), 2016 WL 8290810, at *1 (S.D.N.Y. Dec. 1, 2016) ("Among other terms, it requires [the p]laintiffs to 'relinquish, waive, and release all of the [d]efendants [. . .] from all possible claims[. . .], whether presently known or unknown by [the p]laintiffs, which may have arisen from the beginning of time through the date of their signatures on [the] Agreement.'"); *Beckert*, 2015 WL 6503832, at *1 ("In exchange, [the] plaintiff would release [the] defendants from any claims he may have against them, based upon any set of facts, 'from the beginning of time to the date of execution of this Agreement.'"); *cf. Ezpino*, 2017 WL 3037483, at *1 (approving settlement release language which included "claims for breach of any public works contracts" and "claims for attorneys' fees and costs"); *Burgos v. San Miguel Transp., Inc.*, No. 16 Civ. 5929 (PAE), 2016 WL 7015760, at *3 (S.D.N.Y. Dec. 1, 2016) ("[A]lthough the release [also] references 'discrimination law(s),' it is tailored to [the plaintiff]'s wage-and-hour claims."). Furthermore, several courts have found that general release provisions may be appropriate under certain conditions. *See, e.g.*, *Lola*, 2016 WL 922223, at *2 ("[T]here is nothing inherently unfair about a release of claims in an FLSA settlement."). For example, a "general release . . . with former employees who have no ongoing relationship with the employer[] makes sense in order to bring complete closure." *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015). Here, Plaintiff has evinced a desire to "mov[e] on from time-consuming[] litigation" with Defendant. (Dkt. 32-1 at 4). The *Souza* court then modified the general release provision at issue in that case so that it would be "mutual in all respects," because "[a] mutual release will ensure that both the employees and the employer are walking away from their relationship up to

that point in time without the potential for any further disputes." *Souza*, 2015 WL 7271747, at *5; *see Weng v. T&W Rest., Inc.*, No. 15-CV-08167 (PAE) (BCM), 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) ("Judicial disfavor of broad releases is especially pronounced . . . where the releases were not mutual and protected only the defendants." (quotation marks and citation omitted)).

In the instant matter, Plaintiff is no longer an employee of Defendant, and the release at issue is mutual. (*See* Dkt. 32-1 at 2; Dkt. 32-2 at ¶ 5(d)). Furthermore, "[b]ecause this case is not a class action, at least one of the dangers posed by an overbroad release – that it would bind class members who had no bargaining power concerning the settlement terms – is not present here." *Cionca v. Interactive Realty, LLC*, No. 15-CV-05123 (BCM), 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) (finding mutual general releases to be fair and reasonable where they were "negotiated by competent counsel for both sides," the plaintiff was "no longer an employee of the defendants," and where it was a sensible means "to bring closure to both sides"); *see Lola*, 2016 WL 922223, at *2 ("[T]he [c]ourt is satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a balanced negotiation, in which [the p]laintiffs were represented by able counsel."). Therefore, under the circumstances of this case, the Court finds that the mutual waiver and release provisions are a fair and reasonable outcome of balanced negotiations, occurring over several months, which will bring closure to both sides.

## V.   The Requested Attorney's Fees Award is Reasonable

"When a[] FLSA settlement includes an allotment of attorney's fees, the court must also evaluate the reasonableness of the fees. This ensures that the agreement is not

influenced by conflicts between the interests of counsel and the plaintiff's interest in obtaining the best possible recovery." *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG) (VMS), 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 21, 2014) (citations omitted). The Second Circuit has set forth six factors to evaluate the reasonableness of attorney's fees in the FLSA settlement context: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quotation marks and citation omitted). "In addition, a plaintiff seeking attorneys' fees must submit evidence providing a factual basis for the reward, or else the fee application will be rejected or reduced." *Hernandez v. Tabak*, No. 12 Civ. 1402 (PKC), 2013 WL 1562803, at *1 (S.D.N.Y. Apr. 10, 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336 ("To aid a court in determining the reasonableness of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award."))

"A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Flores v. Negril Vill., Inc.*, No. 15-CV-2658 (AJN), 2016 WL 8969316, at *1 (S.D.N.Y. Apr. 25, 2016) (citing *Thornhill v. CVS Pharmacy, Inc.*, No. 13 Civ. 5507 (JMF), 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014)). "In this Circuit, courts typically approve attorney's fees that range between 30 and 33[ percent]." *Thornhill*, 2014 WL 1100135, at *3 (citing *Guzman v. Joesons Auto Parts*, No. CV 11-4543 (ETB), 2013 WL 2898154, at

*4 (E.D.N.Y. June 13, 2013) (collecting cases)); *see Calle*, 2014 WL 6621081, at *3 ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

## A.     Counsel's Supplemental Submission

Upon the direction of the Court, Ms. Elizabeth Nicolas, Esq., ("Nicolas"), submitted an attorney affidavit outlining the legal work performed by Empire Justice Center on behalf of Plaintiff in the instant matter. (Dkt. 35). Nicolas received her juris doctorate degree in 2009, and proceeded to work several years as a corporate litigator and then as a contract attorney before joining the Empire Justice Center in November 2014, as a staff attorney. (*Id.* at ¶¶ 6, 8-10). Nicolas avers that she regularly represents "low-income individuals in employment cases," and that she has practiced in "a broad range of civil right[s] and employment issues," including those arising under the FLSA and the NYLL. (*Id.* at ¶¶ 10, 12). In total, she has practiced law for about seven years, and, in particular, has worked in the field of labor and employment law for over three years. (*Id.* at ¶ 12).

Although Nicolas avers that over 136 hours of legal work were accumulated on behalf of Plaintiff during the pendency of this case, she requests that the Court approve attorney's fees in the amount of $7,500.00, which represents compensation for 37.5 hours at a rate of $200.00 per hour. (*See id.* at ¶ 41). "The reasonable hourly rate is, generally, the hourly rate employed by attorneys in the district in which the litigation is brought." *Salazar-Martinez v. Fowler Bros.*, No. 10-CV-6257, 2012 WL 4062582, at *1 (W.D.N.Y. Sept. 14, 2012) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).

Nicolas cites to several recent cases in this district that have found the reasonable hourly rate for attorneys with similar experience as ranging from $185.00 to $260.00. (Dkt.

35 at ¶ 36).  However, none of these cases involved a FLSA settlement.  *See Davis v. Shah*, No. 12-CV-6134 (CJS), 2017 WL 2684100, at *1 (W.D.N.Y. June 22, 2017) (involving a challenge to "provisions of [the] New York State Social Services Law"); *Myers v. Bd. of Educ. of the Batavia City Sch. Dist.*, No. 13-CV-342S, 2016 WL 4642920, at *1 (W.D.N.Y. Sept. 7, 2016) (involving allegations of sexual discrimination in violation of Title IX and the Fourteenth Amendment); *Costa v. Sears Home Improvement Prod., Inc.*, 212 F. Supp. 3d 412, 414 (W.D.N.Y. 2016) (involving an unlawful retaliation claim against an employer in violation of Title VII of the Civil Rights Act of 1964).  Nonetheless, to the extent that these cases have bearing on labor and employment issues, they are instructive as to the prevailing rate for attorneys engaged in similar types of cases in this district.  *See Taylor v. Delta–Sonic Car Wash Sys., Inc.*, No. 14-cv-6698, 2017 WL 436045 (W.D.N.Y. Jan. 31, 2017) (applying *Costa* in the FLSA context, and stating that *Costa* "discussed the hourly rates used in fee applications involving civil rights and labor and employment law in the Western District of New York").  Furthermore, several recent cases involving FLSA actions have approved of hourly rates in line with Nicolas's request.  *See Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (finding $200 per hour as a reasonable average hourly rate in FLSA litigation); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y. 2011) (finding that $195 per hour for an associate was reasonable in FLSA litigation); *Falleson v. Paul T. Freund Corp.*, 736 F. Supp. 2d 673, 676 (W.D.N.Y. 2010) (concluding that $215 per hour was "a reasonable average rate for the work of the attorneys and paralegals who worked on this [FLSA] matter"); *see also Cunningham v. Suds Pizza, Inc.*, No. 15-CV-6462, 2017 WL 6000616, at *13 (W.D.N.Y. Dec. 1, 2017) (finding that

- 18 -

the hourly rate of $250 for a partner in FLSA litigation as reasonable); *Taylor*, 2017 WL
436045, at *7 (same).

The Court notes that the $7,500.00 fee award represents 37.5% of the $20,000.00
settlement amount.  "As a percentage of the total award, that amount is more than courts
in this [C]ircuit typically approve." *Villalva-Estrada v. SXB Rest. Corp*, No. 14-CV-10011
(AJN), 2016 WL 1275663, at *3 (S.D.N.Y. Mar. 31, 2016) ("[T]he proposed settlement
would award . . . 37.5% of the total settlement amount[] to [the plaintiff's] counsel."); *see*
*Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y.
Jan. 15, 2016) (declining to approve attorney's fees representing 36% of the total settlement
amount where the "case is relatively straightforward and has not progressed beyond the
preliminary stage of discovery"); *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13
Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing fee award
representing "37% of the net settlement fund" to one-third of the total settlement amount
where no "extraordinary" circumstances warranted a higher award).  However, the
application of the *Goldberger* factors warrants the approval of the $7,500.00 fee award.

**B.    The *Goldberger* Factors**

**1.    Time and Labor Expended by Counsel**

Plaintiff was directed to produce an affidavit detailing the nature of the work
performed, her counsel's experience level, and contemporaneous time records, if they were
available.  Nicolas has supplied this supplemental submission and has attached
contemporaneous time records as an exhibit to her affidavit. (Dkt. 35; Dkt. 35-1).  "These
records reveal few apparent redundancies and little duplication of effort. The vast majority

of time was spent investigating the facts and thereafter negotiating a settlement with opposing counsel." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005); *see Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) ("[C]ounsel submitted time entries explaining in sufficient detail the work that was done, billed only for time spent on critical tasks such as client communication and drafting the complaint, did not engage in block-billing for many hours of work at a time, and did not bill for any travel time whatsoever."); *cf. Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 593 (S.D.N.Y. 2015) ("The Court's review of the billing records indicates unjustified and unnecessary duplication of work. . . ."). Accordingly, the Court finds that Plaintiff's counsel appropriately expended time and labor towards effectively litigating Plaintiff's case.

### 2. The Magnitude and Complexities of the Litigation

In terms of the magnitude and complexity of this case, the Court finds that Plaintiff's lawsuit is not as complex as other FLSA/NYLL "hybrid" actions frequently addressed by courts in this Circuit. *See, e.g., Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and that [a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." (quotation marks and citation omitted)). For example, this case involved just a single plaintiff and a single employer; there were no collective or class allegations stated in Plaintiff's Complaint. (*See* Dkt. 1).

Nonetheless, the nature of the instant claims were at least moderately complex, considering that Plaintiff asserted six causes of action involving questions of both federal and state law. (*See* Dkt. 1 at 8-11). In addition, Nicolas avers that a primary point of contention between the parties related to the application of an exemption under the FLSA, which requires a fact-intensive inquiry and necessitated significant document investigation. (Dkt. 35 at ¶¶ 25-27); *see also Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 491-92 (S.D.N.Y. 2017) (discussing the applicability and history of the "Home Health Aide Exemption" regulation); *Cowell v. Utopia Home Care, Inc.*, No. 14-CV-736 (LDW)(SIL), 2016 WL 4186976, at *3 (E.D.N.Y. Aug. 8, 2016) ("[T]he FLSA's overtime pay provisions do not apply to 'any employee employed in domestic service employment to provide companionship services for individuals who (because of age of infirmity) are unable to care for themselves. . . .'" (quoting 29 U.S.C. § 213(a)(15))). "Deciding whether an exemption applies requires the court to consider both questions of fact and law. The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the FLSA's overtime provision is a question of law." *Harper v. Gov't Emps. Ins. Co.*, 754 F. Supp. 2d 461, 463 (E.D.N.Y. 2010) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

Although this case is not immensely complex, one of the primary issues between the parties required the resolution of mixed questions of law and fact. *See Odom*, 275 F.R.D. at 413 (noting that "mixed questions of fact" raised additional complexity); *see generally Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (noting that litigation involving "an individualized and highly fact-intensive analysis"

would have made the resolution of the claims more difficult without settlement).  To this point, the contemporaneous time records submitted by Nicolas reveal a number of entries pertaining to employment-related document review.  (*See* Dkt. 35-1 at 2-5).  Accordingly, the relative complexity of this action also warrants approval of the requested attorney's fee award.

### 3.     The Risk of the Litigation

Furthermore, "[u]ncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." *Febus*, 870 F. Supp. 2d at 340 (quotation marks and citation omitted).  In the instant matter, the risks of further litigation were at the forefront of the parties' negotiations.  Both sides determined that settlement was more favorable than the uncertainties and continued expense of continued litigation.  (Dkt. 32-1 at 3-4).  Moreover, the application of the companionship exemption discussed above increased the risk to Plaintiff of proceeding with motion practice or to trial.  *See Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *18 (S.D.N.Y. Sept. 16, 2011) (noting that a "fact-intensive inquiry" increased the complexity of the case, which made recovery less certain).  Whether the exemption applied to Plaintiff could have limited her recovery of the allegedly unpaid compensation.  (*See* Dkt. 35 at ¶ 26); *see generally Chandler v. Total Relocation Servs., LLC*, No. 15 Civ. 6791 (HBP), 2017 WL 3311229, at *3 (S.D.N.Y. Aug. 2, 2017) (noting that the plaintiffs' recovery at trial was not certain where the parties disputed the application of an exemption to the FLSA's overtime pay provisions); *Frank*, 228 F.R.D. at 189 (noting that the plaintiffs' "success remains uncertain if settlement is not approved" where it was likely that the defendant

would assert the applicability of an exemption "to bar claims by some of the plaintiffs"). Therefore, the Court finds that the risks of litigation counsel in favor of the requested fee award as well.

### 4.     The Quality of Representation

The Court also notes that counsel has secured a settlement amount that constitutes substantially all of Plaintiff's allegedly unpaid compensation and possible liquidated damages. "The 'most critical factor' in what is a reasonable attorney's fees [award] 'is the degree of success obtained' by the plaintiff." *Velasquez v. Digital Page, Inc.*, 124 F. Supp. 3d 201, 204 (E.D.N.Y. 2015) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)); *see Goldberger*, 209 F.3d at 55 (noting class counsel's laudatory efforts to secure almost 90% of all "'provable'" class damages). This favorable result was achieved at an early stage of the litigation and without great exertion of Court resources, which is a positive reflection of counsel's experience and the quality of the representation. *See Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013) ("Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) ("Class Counsel were able to use their considerable expertise in the type of claims asserted in this action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation."); *see also Frank*, 228 F.R.D. at 189 (approving of the fee award after noting that "counsel ha[d] extensive experience in employment litigation, and particular expertise

with the FLSA"). Accordingly, counsel's representation of Plaintiff weighs in favor of approving the requested fee award.

### 5.     The Requested Fee in Relation to the Settlement

"Courts also consider the size of the settlement to ensure that the percentage award does not constitute a 'windfall.'" *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 Civ. 9705 (JCF), 2017 WL 2198158, at *11 (S.D.N.Y. May 17, 2017) (quotation marks and citation omitted). The Court finds that $7,500 "is significantly less than the actual amount that counsel would have [been able to] bill[] on this case." *See In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 489 (E.D.N.Y. 2002) (noting that while the lodestar method indicated that counsel would have been able to bill over $1,600,000 of the $2,200,000 settlement amount, counsel sought only $660,000). Indeed, Plaintiff's counsel accrued over 136 hours of billable hours in securing the favorable settlement for Plaintiff in this case, but is seeking compensation for only 37.5 hours. (Dkt. 35 at ¶¶ 37-38).

"Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216 (RLE), 2014 WL 3778173, at *13 (S.D.N.Y. July 31, 2014); *see Frank*, 228 F.R.D. at 189. Accordingly, despite being slightly more than the one-third percentage generally accepted by courts in this Circuit, this Court does not find that a 37.5% attorney's fee award represents a windfall in relation to the settlement amount in this case. *See Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 WL 4006896, at *12 (S.D.N.Y. July 1, 2015) (finding that the fee award was not a windfall

where the plaintiffs would still "recover a significant amount of their actual damages" after the attorneys' fees and other costs are distributed).

### 6.  Public Policy Considerations

Furthermore, public policy considerations counsel in favor of the requested fee award because the Empire Justice Center provides necessary legal services without cost to low income plaintiffs—such as Plaintiff—and relies upon attorney's fee awards for about 10% of its annual revenue. (Dkt. 35 at ¶ 14). "The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes." *Asare*, 2013 WL 6144764, at \*22. If counsel was not adequately compensated, this would risk the availability of legal representation for low-income individuals in important employment and labor-related matters such as this one. *See Frank*, 228 F.R.D. at 189 ("In addition, if this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorneys—these or others—would likely be willing to take on future small-scale class actions such as this."). Thus, "due to the relatively small settlement involved here, the requested fee award is necessary to compensate counsel adequately." *Frank*, 228 F.R.D. at 189 (approving an attorney's fee award of "approximately 40%" the settlement amount) (citing *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at \*6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement)).

Therefore, the Court concludes that the agreed upon attorney's fee award of $7,500.00 is reasonable under the circumstances presented.

## **CONCLUSION**

For the foregoing reasons, the (Dkt. 32) Joint Motion for Settlement Approval is granted, and the Agreement is approved.  The Clerk of Court is directed to close this case.

SO ORDERED.

_____

ELIZABETH A. WOLFORD
United States District Judge

DATED:     February 26, 2018
           Rochester, New York